UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

IN RE:

MARC E. PEROSIO and
DEBRA J. PEROSIO,

                      Debtors.

MARC E. PEROSIO and
DEBRA J. PEROSIO,

                      Appellants,           Chapter 12
                                                   Bankr. Case No. 03-67641

    -against-

                                                         Dist. Ct. Case No. 6:05-CV-895
NBT BANK NATIONAL ASSOCIATION and                              (LEK)
UNITED STATES OF AMERICA,

                      Appellees.

## MEMORANDUM-DECISION AND ORDER[1]

**I.    INTRODUCTION**

       Marc E. Perosio and Debra J. Perosio ("Debtors" or "Appellants") appeal from a Memorandum-Decision, Findings of Fact, Conclusion of Law and Order ("MDO") of the United States Bankruptcy Court for the Northern District of New York (*Gerling, Chief B.J.*) entered March 2, 2005, granting a motion to dismiss filed by the United States of America, Department of Agriculture, Farm Services Agency ("FSA" or "Appellee"); denying motions for summary judgment

---

[1] For printed publication by the Federal Reporters.

1

against FSA and NBT National Bank Association ("NBT" or "Appellee") filed by Appellants; denying without prejudice a motion for reformation of mortgages filed by FSA; and modifying an automatic stay to allow Appellees to seek reformation of their mortgages in State court. Notice of Appeal (Dkt. No 1, Attach. 53) at 1.

Appellants assert that the Bankruptcy Court committed error in (1) its interpretation of 11 U.S.C. § 547 with regard to NBT's *lis pendens* as a preferential transfer, (2) its interpretation of 11 U.S.C. § 544(a)(3) with regard to the voidability of the mortgages held by FSA and NBT, and (3) its decision as a matter of law that a *bona fide* purchaser would have constructive notice of recorded documents within Appellants' chain of title. Appellants' Br. (Dkt. No. 6) at 26–27. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). See In re Litas Int'l, Inc., 316 F.3d 113, 116 (2d Cir. 2003); FED. R. BANKR. P. 8001(a). For the following reasons, the March 2, 2005 MDO of the Bankruptcy Court is affirmed.

**II.   FACTS**

As neither party disputes any material fact on appeal, the Court notes the following chronology of events as set forth in substantial part by the Bankruptcy Court. MDO (Dkt. No. 1, Attach. 49) at 4–7.

Irving T. Brown and Elizabeth A. Brown conveyed three parcels (Parcels I, II, and III) of land to Appellants by deed dated May 13, 1980. The Parcels were located in New York's Cayuga and Tompkins Counties. Included in the deed was a description not only of Parcels I, II, and III, but also of four parcels excepted from Parcels I and II ("Exceptions").

On or about February 2, 1999, Appellants executed a note in the amount of $292,000 and

mortgages in the amounts of $50,000 and $240,000 in favor of Central National Bank ("CNB"), predecessor in interest to NBT.  It was intended by the parties that the mortgages cover Appellants' interests in Parcels I, II, and III.  However, the mortgages only contained a description of the Exceptions to Parcels I and II, as well as a description of Parcel III.  They did not contain any descriptions of Parcels I and II as set forth in the original deed to Appellants.

On or about May 10, 2001,[2] Appellants executed a note and mortgage in the amount of $200,000 in favor of FSA, with the intent that it cover Appellants' interest in Parcels I, II, and III.  On the same date, Appellants executed a second note and mortgage in the amount of $30,250 in favor of FSA, with the intent of conveying an interest in Parcels I, II, and III.  Like the CNB mortgages, the land descriptions in the May 10 mortgages described Parcel III, as well as the Exceptions to Parcels I and II.  They did not contain a description of Parcels I and II.

On or about October 3, 2003, NBT filed a Notice of Pendency ("*lis pendens*") and an Amended Notice of Pendency in the Office of the Clerk for Tompkins County.  On or about October 14, 2003, NBT also filed a Notice of Pendency and an Amended Notice of Pendency in the Office of the Clerk for Cayuga County.  The Notices were filed in actions by NBT to foreclose its two mortgages and to reform the real property descriptions found in the mortgages.

On or about November 12, 2003, Appellants filed a voluntary petition pursuant to Chapter 12 of the Bankruptcy Code (the "Code").  Thereafter, on or about February 13, 2004, Appellants filed an adversarial proceeding against Appellees seeking to avoid both NBT's and FSA's mortgages under 11 U.S.C. § 544(a)(3), and to avoid NBT's *lis pendens* as preferential transfers

---

[2] Also on or about May 10, 2001, FSA filed a financing statement in the Tompkins County Clerk's office for the purpose of perfecting its security interest in certain collateral belonging to the Appellants, including crops, livestock, and farm equipment.

under 11 U.S.C. § 547.[3]

### III. DISCUSSION

A. Standards of Review

In reviewing the Bankruptcy Court's decision, this Court reviews conclusions of law *de novo*. In re Manville Forest Prods. Corp., 209 F.3d 125, 128 (2d Cir. 2000); In re Petition of Bd. of Dirs. of Hopewell Int'l Ins. Ltd., 275 B.R. 699, 703–04 (Bankr. S.D.N.Y. 2002); FED. R. BANKR. P. 8013. The Bankruptcy Court's factual determinations are reviewed for clear error. MBNA Am. Bank, N.A. v. Hill, 436 F.3d 104, 107 (2d Cir. 2006).

When the Bankruptcy Court's ruling is based on undisputed facts, as is the case here, this Court reviews the Bankruptcy Court's dismissal of Appellants' complaint against FSA and its denial of Appellants' cross-motion for summary judgment *de novo*. In re Nemko, Inc., 202 B.R. 673, 677 (E.D.N.Y. 1996) (citing In re Males, 999 F.2d 607, 609 (2d Cir. 1993)). This Court also reviews the Bankruptcy Court's denial of Appellants' motions for summary judgment *de novo*. Keeffe v. Natalie, 337 B.R. 11, 13 (N.D.N.Y. 2006) (Kahn, D.J.). Appellants are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Appellants are] entitled to judgment as a matter of law." See FED. R. BANKR. P. 7056 (making

---

[3] Appellants also asserted an estoppel cause of action against FSA. Compl. (Dkt. No. 1, Attach. 31) at 9–10. However, the claim's supporting facts seemingly refer to an action against NBT. See id. The Bankruptcy Court, noting this discrepancy and the fact that none of the parties referenced the claim in their respective motions, did not consider the estoppel cause of action in ruling on the motions and cross-motion for summary judgment. See id. at 17 & n.19. As such, the estoppel cause of action is not ripe for appellate review by this Court. See 28 U.S.C. § 158 (2006); In re Johns-Manville Corp., 340 B.R. 49, 69 (S.D.N.Y. 2006).

4

FED. R. CIV. P. 56 applicable to bankruptcy adversary proceedings).  Appellants must make a prima facie showing that they are entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986).  In so deciding, this Court must resolve all ambiguities and draw all inferences in favor of Appellees.  See Derienzo v. Metro. Transp. Auth., 404 F. Supp. 2d 555, 562 (S.D.N.Y. 2005).

The Bankruptcy Court's modification of the automatic stay was discretionary, and is thus reviewed for abuse of discretion.  See In re Sonnax Indus., Inc., 907 F.2d 1280, 1286 (2d Cir. 1990).

B. *Lis pendens* as a Preferential Transfer Under 11 U.S.C. § 547

Appellants claim that NBT's *lis pendens* is an avoidable preferential transfer under Section 547.  In so doing, Appellants argue that the *lis pendens* is preferential "because it perfected or created additional rights in the debtor's property in favor of NBT . . . . [and] [i]t was also a transfer on account of an antecedent debt."  Appellants' Br. (Dkt. No. 6) at 17.  However, the *lis pendens* must first be a transfer under New York law before a preferential analysis under the Code is appropriate.

Under the Code,  "the [Appellants] may avoid any *transfer* of an interest of the debtor in property." 11 U.S.C. § 547(b) (2006) (emphasis added).  Transfer is defined by the Code as:

(A)  the creation of a lien;
(B)  the retention of title as a security interest;
(C)  the foreclosure of a debtor's equity of redemption; or
(D)  each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with -
  (i)  property; or
  (ii)  an interest in property.

11 U.S.C. § 101(54) (2006).

Presumably, Appellants' transfer theory rests on the "creation of a lien" language of Section

5

101. See 11 U.S.C. § 101(54)(A). As correctly noted by the Bankruptcy Court, states differ as to whether the filing of a *lis pendens* constitutes a transfer so as to qualify for preferential disqualification under Section 547. See MDO (Dkt. No. 1, Attach. 49) at 8–9. New York, however, has consistently held that the filing of a *lis pendens* is merely a method of giving notice and does not create a lien. See, e.g., In re Am. Motor Club, Inc., 109 B.R. 595, 597 (Bankr. E.D.N.Y. 1990) ("A notice of pendency . . . does not create a lien or encumbrance on the property. It merely allows the plaintiff to prosecute its lawsuit to the execution of a judgment by putting the world on constructive notice that the property is the subject of a pending lawsuit."); Simon v. Vanderveer, 155 N.Y. 377, 382 (1898) ("'The lis pendens is merely notice of some claim made in respect of the property . . . [and] it does not of itself create an incumbrance apart from the equity on which the action is founded.'"); Finkelman v. Wood, 609 N.Y.S.2d 655, 656 (App. Div. 2d Dep't 1994) ("[N]otice[s] of pendency . . . . have as their general object the preservation of existing property rights and do not affect the merits of those interests."); Schoepp v. State, 415 N.Y.S.2d 276, 277 (App. Div. 3d Dep't 1979) ("The lis pendens does not create an encumbrance or a lien . . . it merely provides notice that an action is pending which may affect title to real property.") (citations omitted).

Appellants fail to provide controlling law in support of their contention that NBT's *lis pendens* is a voidable transfer. Instead, Appellants focus on the preferential aspect of their *lis pendens* claim and only tangentially address, through reference to a Ninth Circuit decision, whether the *lis pendens* first constitutes a transfer under New York law. See Appellants' Br. (Dkt. No. 6) at 17. This is apparently because Appellants fail to recognize the two distinct standards: first showing

a transfer and second showing the transfer was preferential.[4]  Appellants seemingly wish to show that because the *lis pendens* are allegedly preferential, they are also a transfer.  Such a showing incorrectly interprets Section 547.  As such, because this Court finds that NBT's *lis pendens* is not a transfer in accordance with Section 101(54) of the Code as it applies to New York law, the Court need not address Appellants' contention that the *lis pendens* is preferential under Section 547.

C. Voidability of Mortgages Under 11 U.S.C. § 544(a)(3)

Appellants seek to avoid Appellees' mortgages as *bona fide* purchasers without notice of potential adverse claims.  The Code permits Appellants to avoid "any transfer of property of the debtor . . . that is voidable by . . . a bona fide purchaser of real property . . . against whom *applicable law* permits such transfer to be perfected."  11 U.S.C. § 544(a)(3) (2006) (emphasis added).  The rights of a *bona fide* purchaser are determined by state law.  In re Rodriguez, 261 B.R. 92, 94 (Bankr. E.D.N.Y. 2001) (citing McKenzie v. Irving Trust Co., 323 U.S. 365, 371 (1945)).

New York recognizes that *bona fide* good faith purchaser status is destroyed by constructive notice of adverse claims.  See Cambridge Valley Bank v. Delano, 38 N.Y. 326, 340 (1872).  A good faith purchaser is deemed to have constructive notice of any "deed or instrument properly recorded." Fairmont Funding, Ltd. v. Stefansky, 754 N.Y.S.2d 54, 56 (App. Div. 2d Dep't 2003).  Furthermore, an intended purchaser is "presumed . . . to have known every fact disclosed or to which an *inquiry suggested by the record* would have led."  Id. (emphasis added).

---

[4] Appellants state in their brief that "[t]he filing of these lis pendens falls squarely within the Code definition of a transfer of property of the debtor, *because* it perfected or created additional rights in the debtor's property . . . . [and] was also a transfer on account of an antecedent debt." Appellants' Br. (Dkt. No. 6) at 17 (emphasis added).  Such a statement suggests that a transfer is shown by complying with Section 547(b), thus ignoring the necessity of first complying with Section 101(54) as it pertains to New York.

In the present case, Appellants rely on the "lack of a description of Parcels I and II" in Appellees' mortgages to support their claim for status as *bona fide* purchasers without knowledge of adverse interests. Compl. (Dkt. No. 1, Attach. 31) at 5–6. However, as was correctly noted by the Bankruptcy Court and supporting New York case law, a *bona fide* purchaser's duty to search the record does not consist of merely searching the mortgages. See Fairmont Funding, Ltd., 754 N.Y.S.2d at 56. Instead, a *bona fide* purchaser has a duty to examine every deed or record properly recorded within the chain of title. Id.

After an examination of all items in a chain of title, a purchaser is deemed to have actual notice of "any fact sufficient to put a prudent man upon an inquiry." Cambridge Valley Bank, 38 N.Y. at 340. Here, a *bona fide* purchaser searching Appellants' chain of title would have ample notice of discrepancies and possible adverse claims. First, a search of the grantor/grantee index would have revealed that Appellants' 1980 deed granted title to Parcels I, II, and III; specifically *excluding* the Exceptions to Parcels I and II. Thus, an examination of the mortgages to NBT and FSA, which *include* the Exceptions,[5] would have caused a reasonable purchaser to inquire. Secondly, the UCC financing statement filed by FSA would have caused further inquiry as to an adverse interest. Finally, NBT's *lis pendens*, filed specifically to give *notice* of NBT's interest, correctly described the property in question. As such, a reasonable purchaser would not only have

---

[5] Although the record shows that at no time subsequent to their 1980 deed did the Appellants gain title to the Parcel I and II Exceptions, such an examination is outside Appellants' direct chain of title. See Andy Assocs., Inc. v. Bankers Trust Co., 49 N.Y.2d 13, 24 (1979) (noting that in a grantor/grantee indexing system, a *bona fide* purchaser is deemed to have constructive notice only of those records in the direct chain of title). However, this fact alone is not controlling because, as noted above, the discrepancy between Appellants' deed and Appellees' mortgages, both of which are in Appellants' direct chain of title, would have been sufficient to cause a reasonable purchaser to inquire.

notice of an adverse interest, but would also have notice of a discrepancy in property descriptions between the *lis pendens* and the mortgages.[6]  Therefore, this Court finds that a reasonable purchaser, following an examination of Appellants' chain of title, would have sufficient notice of Appellees' mortgages.

D. Inquiry Notice is a Question of Law

Appellants contend that an issue of fact remains as to whether "a reasonably prudent person would have inquired *outside* of the record title." Appellants' Br. (Dkt. No. 6) at 26 (emphasis added).  Again, Appellants misconstrue the relevant issue.  As a matter of law, Appellants have a duty to inquire when documents *within* the chain of title would put a reasonably prudent purchaser on notice of an adverse interest.  See Fairmont Funding, Ltd., 754 N.Y.S.2d at 56.  As discussed above, the documents of record in the present case were sufficient to trigger a *bona fide* purchaser's duty to inquire.  As such, the Bankruptcy Court properly ruled as matter of law that a *bona fide* purchaser would have had constructive notice of recorded documents within the Appellants' chain of title.

E.  Modification of the Automatic Stay Not an Abuse of Discretion

The Bankruptcy Court's modification of the automatic stay was not a abuse of discretion.  In modifying the automatic stay, the Bankruptcy Court noted that reformations to the four mortgages were needed with respect to each of the three Parcels. MDO (Dkt. No. 1, Attach. 49) at 16.  The Bankruptcy Court concluded that in the interest of judicial economy, reformation in a single forum

---

[6] Appellants concede that NBT's *lis pendens* were sufficient to give constructive notice. Appellants' Br. (Dkt. No. 6) at 15.

9

was most appropriate. See id. Such an analysis is proper use of discretion. See In re Sonnax Indus., Inc., 907 F.2d at 1286 (describing judicial economy as a factor to be considered in determining an abuse of discretion).

## VI.    CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the March 2, 2005 Memorandum-Decision and Order of the Bankruptcy Court is **AFFIRMED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:  November 21, 2006
            Albany, New York

Lawrence E. Kahn
U.S. District Judge